# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

          Plaintiff,

v.                                            **Case No. 05-CR-215**

**NAVIN BABOOLAL,**

          Defendant.

## RECOMMENDATION TO THE HONORABLE LYNN ADELMAN ON THE DEFENDANT'S MOTION TO SUPPRESS

On August 23, 2005, the grand jury returned an indictment against the defendant, Navin Baboolal ("Baboolal"), charging him with nine counts of wire fraud in violation of 18 U.S.C. § 1343. Baboolal, a Canadian citizen, has filed a motion to suppress all evidence regarding the wire fraud scheme described in the indictment that was seized on September 10, 2004, by Canadian law enforcement officials. The seizure was the result of a Canadian search warrant executed at Baboolal's home, office, and mailbox, all of which were located in Canada. In support of his motion, Baboolal says (1) that he is entitled to the protections of the United States Constitution; (2) that the warrant authorizing a search of his residence was not supported by probable cause; and (3) that the search warrants at issue lacked particularity.

The defendant's motion for an evidentiary hearing was denied by this court on April 4, 2006. This court determined that an evidentiary hearing was not necessary since the issues of probable

cause and that the warrant lacked particularity were legal matters to be analyzed within the four corners of the warrant and supporting application. In addition, the court indicated that any determination of the applicability of the good faith exception was premature.

The government responded to Baboolal's motion to suppress asserting that the Fourth Amendment does not apply to the search and seizure of Baboolal's property. Alternatively, the government asserts that the warrant was supported by probable cause and was not overbroad. Baboolal replied, detailing his connections to the United States, and alleging that these were sufficient to entitle him to protection under the Fourth Amendment. The pleadings on the motion to suppress are now closed, and it is ready for resolution.

## Analysis

The Supreme Court has held that the Fourth Amendment generally does not apply to the seizure of property that is owned by nonresident aliens and is located in a foreign country. United States v. Verdugo-Urquidez, 494 U.S. 259, 261 (1990). In Verdugo-Urquidez, the defendant was arrested in Mexico by Mexican law enforcement and brought into the United States after discussions with United States law enforcement officials. Id. at 262. While Verdugo-Urquidez was in custody in the United States, agents of the Drug Enforcement Administration joined with Mexican law enforcement and conducted a warrantless search of the defendant's properties in Mexico. Id. at 262-63. The Supreme Court held that because the defendant was a citizen and resident of Mexico with no voluntary attachment to the United States, the Fourth Amendment did not apply to the search of his Mexican properties. Id. at 274-75.

In arguing that he is subject to the protection of the Fourth Amendment, Baboolal contends that the "joint venture doctrine" is applicable to the facts of this case. Under the joint venture

-2-

Case 2:05-cr-00215-LA   Filed 06/16/06   Page 2 of 8   Document 32

doctrine, courts have extended Fourth Amendment protections to nonresident aliens when "American law enforcement officials substantially participated in the search or if foreign officials conducting the search were actually acting as agents for their American counterparts." United States v. Behety, 32 F.3d 503, 510 (11th Cir. 1994) (citing United States v. Rosenthal, 793 F.2d 1214, 1231 (11th Cir. 1986). However, all but one of the cases that Baboolal cites in support of his position regarding the joint venture doctrine predate the holding of Verdugo-Urquidez. The one exception, Behety, an Eleventh Circuit case, makes no substantive reference to Verdugo-Urquidez other than to refer to the underlying Ninth Circuit decision, indicating that it had been reversed by the Supreme Court. Behety, 32 F.3d at 511.

The Ninth Circuit in Verdugo-Urquidez relied heavily upon the joint venture doctrine in its decision that the evidence seized should be suppressed, United States v. Verdugo-Urquidez, 856 F.2d 1214, 1228 (9th Cir. 1988). The Supreme Court reversed the Ninth Circuit without referencing the doctrine, holding instead that the Fourth Amendment was wholly inapplicable to the facts presented. Verdugo-Urquidez, 494 U.S. at 261. This raises the question of whether the joint venture doctrine has continued viability.

On one hand, it could be argued that the Supreme Court's failure to apply the Fourth Amendment and even make reference to the joint venture doctrine in a situation where the Circuit Court relied upon the doctrine, indicates that the Court intended to render the doctrine inapplicable as an independent basis for extending the Fourth Amendment to searches and seizures of nonresident alien property located in foreign countries. On the other hand, the joint venture doctrine may remain viable in situations where nonresident defendants with substantial connections to the United States are subjected to searches by foreign law enforcement.

-3-

In any event, the facts in <u>Verdugo-Urquidez</u> are distinguishable from the facts in the present case only in ways that make suppression of the evidence seized by Canadian officials a less likely outcome. In <u>Verdugo-Urquidez</u>, United States agents, in effect, directed the arrest of the defendant and participated in the search of his Mexican property while the defendant was in custody within the United States. <u>Id.</u> at 262. Nonetheless, the Supreme Court held that the evidence seized need not be suppressed. In contrast to <u>Verdugo-Urquidez</u>, in the present case, Canadian law enforcement, alleging violations of Canadian law, upon their own initiative obtained a search warrant for Baboolal's property using information provided by U.S. law enforcement. Baboolal was not in the United States at the time of the search, nor were United States officials present for the search.

The only exception the Court provided in <u>Verdugo-Urquidez</u> to its blanket rule that the Fourth Amendment does not apply to searches and seizures of nonresident alien property located in foreign nations is when that nonresident alien voluntarily developed substantial connections to the United States. 494 U.S. at 271. In his reply, Baboolal argues that he has established a sufficient voluntary connection to the United States and therefore should be entitled to Fourth Amendment protection. In support, he submits an affidavit in which he lists essentially six facts that he contends amount to the requisite substantial connection to the United States: (1) he regularly visits, telephones, or engages in online chats with "over a dozen family member and friends" who live in the United States; (2) in 2002 he went shopping in Buffalo, New York; (3) in 2003 he picked up his family at the Buffalo airport; (4) in 2002 and 1990 he took a family vacation to Orlando, Florida; (5) between 1981 and 1996 he visited aunts and uncles in California, Florida, and Georgia; (6) he has numerous business contacts in the United States, as is evidenced by business records in the government's possession.

Courts have scarcely discussed what facts constitute a substantial connection to entitle a nonresident alien to Fourth Amendment protection under Verdugo-Urquidez, but this court cannot say that the rather minimal and transitory connections the defendant outlined constitute the requisite substantial connection. Notably, the defendant has not been voluntarily present within the United States since 2003. When he has been physically within the United States, it has been for brief periods of time and for activities such as vacationing, shopping, or picking up family from the airport. These connections do not fit into the category of substantial, as might apply if one took up residence within this country. As for Baboolal's business relationships to the United States, any federal criminal prosecution will necessarily involve some connection between the defendant and the United States in order to provide a court with jurisdiction. Broadly applying the defendant's position would essentially nullify the holding of Verdugo-Urquidez. The Supreme Court in Verdugo-Urquidez declined to find that the defendant's drug trafficking business was sufficient to establish a sufficient connection and likewise this court finds that Baboolal's alleged wire fraud business is insufficient to establish a substantial connection.

Returning to the joint venture doctrine, if applicable, even if Baboolal could show that he had a substantial connection to the United States, this fact alone would not automatically entitle him to Fourth Amendment protection. The Fourth Amendment generally does not restrain the conduct of foreign law enforcement. Behety, 32 F.3d at 510-11; see also United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 318 (1936). Because the search was not conducted by U.S. law enforcement officers, in order to claim Fourth Amendment protection, Baboolal must establish that the Canadian law enforcement were acting in a joint venture with U.S. law enforcement. Behety, 32 F.3d at 510-11.

Numerous courts have held that there is no joint venture when United States law enforcement officers only provide information to foreign law enforcement. See, e.g., United States v. Marzano, 537 F.2d 257, 270 (7th Cir. 1976) ("[T]he law is clear that providing information to a foreign functionary is not sufficient involvement for the Government to be considered a participant in the acts the foreign functionary takes based on that information." (citing cases)). Behety, 32 F.3d at 511; United States v. Hawkins, 661 F.2d 436, 455-56 (5th Cir. 1981); United States v. Heller, 625 F.2d 594, 599-600 (5th Cir. 1980); Birdsell v. United States, 346 F.2d 775, 782 (5th Cir. 1965).

Baboolal alleges that a joint venture existed because U.S. and Canadian law enforcement had joined together in the "Toronto Strategic Partnership." The Toronto Strategic Partnership is a partnership of Canadian and United States regulatory and law enforcement agencies that cooperate in the investigation of telemarketing fraud. (Aff. of Timothy L. Baldwin at ¶3, Def. Motion to Suppress Exhibit 4, pp. 1-2). Agents with the Social Security Administration and the Federal Trade Commission that were part of the Toronto Strategic Partnership investigated complaints of fraud from U.S. citizens. These investigators developed information that indicated Baboolal may be involved in an alleged fraud. The Canadian search warrant application included the information obtained from this investigation as well as information obtained by Canadian investigators.

As noted above, merely providing information to foreign law enforcement is insufficient to create a joint venture. Although based in part upon information developed by U.S. investigators, it was Canadian law enforcement who were enforcing Canadian laws when they chose to obtain and execute a Canadian search warrant. Even though there was cooperation in the investigation, the actual search and seizure was not a joint venture between U.S. and Canadian law enforcement. Therefore, even if Baboolal could demonstrate a substantial connection to the United States, the

Fourth Amendment would not apply to the search and seizure because the Canadian law enforcement who conducted the search were not acting in a joint venture with U.S. law enforcement.

Finally, one other set of circumstances has been recognized where courts will permit nonresident aliens without a substantial connection to the United States to invoke Constitutional protection with regard to searches and seizures. Evidence obtained by foreign officials in a manner that "shocks the judicial conscience" may be excluded. Behety, 32 F.3d at 510 (quoting United States v. Morrow, 537 F.2d 120, 129(5th Cir. 1976)). This longstanding rule rests upon the Due Process Clause of the Fifth Amendment and therefore remains undisturbed by the holding of Verdugo-Urquidez, which rests upon the Fourth Amendment. The distinction in application emerges from the distinction between the words chosen to define the subjects of the Amendments. The Supreme Court has held that the term "the people" as it is used in the Fourth Amendment is a term of art that encompasses substantially fewer individuals than those encompassed under the broad subject "person" used in the Fifth Amendment. Verdugo-Urquidez, 494 U.S. at 265-66. A nonresident alien with no substantial connection to the United States is not one of "the people" protected by the Fourth Amendment but certainly is a "person" and is therefore entitled to the trial protections guaranteed by the Fifth Amendment. However, Baboolal does not argue, nor could this court find, that the search and seizure at issue here, which was conducted by Canadian law enforcement in accordance with a warrant issued by a Canadian Magistrate, shocks the conscience.

Since this court finds that the Fourth Amendment does not apply to the search of the Baboolal's Canadian property, the defendant's additional arguments alleging that the search warrant application failed to establish probable cause and that the search warrant lacked sufficient particularity, need not be addressed.

**IT IS THEREFORE RECOMMENDED** that the motion to suppress be **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Criminal Procedure 59 (b)(2), and General Local Rule 72.3 (E.D. Wis.); whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

Dated at Milwaukee, Wisconsin this <u>16th</u> day of June, 2006.

<u>s/AARON E. GOODSTEIN</u>
United States Magistrate Judge
