# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
   **Plaintiff,**

  v.                   Case No. 05-CR-215

**NAVIN BABOOLAL**
   **Defendant.**

---

## DECISION AND ORDER

Defendant Navin Baboolal, a Canadian citizen, is charged with nine counts of wire fraud. 18 U.S.C. § 1343. He moved to suppress evidence seized from his home, office and post office box, all of which were located in Canada. The evidence was seized by Canadian law enforcement officials acting pursuant to Canadian search warrants. Defendant argued that the warrant application failed to establish probable cause and that the warrants failed to identify with particularity the items to be seized.

The motion was assigned to a magistrate judge, who recommended that it be denied. He concluded that the Fourth Amendment did not apply to the search of an alien's property in a foreign country by foreign officials, and that defendant had failed to establish substantial ties to this country such that the Amendment should apply. He further concluded that the Canadian authorities were not acting in a "joint venture" with United States law enforcement, such that the strictures of the Constitution should apply to the search.

Defendant objects to the recommendation, arguing that the joint venture doctrine should apply because Canadian agents were, at most, acting as an escort for charges

American law enforcement intended to bring. The government supports the recommendation. My review is de novo. Fed. R. Crim. P. 59(b)(3).

## I. BACKGROUND

On September 9, 2004, a Judge in and for the Province of Ontario, Canada issued three search warrants for locations associated with defendant on the application of Detective Constable James Slater of the Royal Canadian Mounted Police. In the application, Slater stated that he was with the Toronto Strategic Partnership, a coalition of Canadian and American governmental agencies formed for the purpose of investigating deceptive telemarketing in or originating from the province of Ontario and cross-border. He indicated that the partnership was investigating a telemarketing scam developed by defendant and others, which involved contacting American senior citizens and purporting to represent the Social Security Administration ("SSA") and/or a discount pharmaceutical program. The telemarketers employed by the scheme falsely stated that the SSA was having computer problems, solicited the seniors' banking information, and subsequently made unauthorized electronic withdrawals from the victims' accounts. Those who refused to provide personal information were threatened with the cut off of social security or medicare benefits. Much of the information about the scheme included in the application was collected by American law enforcement (the alleged victims were Americans). However, Canadian law enforcement conducted physical surveillance of the operation, traced vehicles, and located a cooperating witness, and the warrant application cited violations of Canadian law as the basis for the request.

## II. DISCUSSION

In United States v. Verdugo-Urquidez, 494 U.S. 259, 261 (1990), the Supreme Court held that the Fourth Amendment does not apply "to the search and seizure by United States agents of property that is owned by a non-resident alien and located in a foreign country." In that case, DEA agents, working in concert with Mexican police, searched the Mexican residences and properties of Rene Verudgo-Urquidez, a Mexican citizen and resident, and suspected drug smuggler.[1] Id. at 262. Verdugo-Urquidez moved to suppress the fruits of the searches in his American drug prosecution, arguing that the agents had failed to obtain a warrant. Id. at 263. The district court denied the motion, but the court of appeals reversed, and the Supreme Court granted certiorari. Id. at 263-64.

The Court noted that the Fourth Amendment extended its protections only to "the people," which referred "to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." Id. at 265. The Court further noted that the Amendment was designed "to restrict searches and seizures which might be conducted by the United States in domestic matters." Id. at 266. The Court distinguished previous cases extending constitutional rights to aliens because those cases involved persons who lawfully entered and/or resided here, unlike Verdugo-Urquidez, who "had no previous significant voluntary connection with the United States." Id. at 271. The Court concluded:

> We think that the text of the Fourth Amendment, its history, and our cases discussing the application of the Constitution to aliens and extraterritorially

---

[1] Prior to the searches, Verdugo-Urquidez had been arrested by Mexican police and turned over to American authorities. He was in custody in the United States at the time of the searches. Id. at 262.

3

> require rejection of respondent's claim. At the time of the search, he was a citizen and resident of Mexico with no voluntary attachment to the United States, and the place searched was located in Mexico. Under these circumstances, the Fourth Amendment has no application.

Id. at 274-75.

Relying on Verdugo-Urquidez, the magistrate judge recommended that defendant's motion be denied. The magistrate judge noted that under the facts of this case application of the Fourth Amendment was even less supportable; the challenged search was carried out solely by Canadian authorities investigating violations of Canadian law, and defendant was in Canada, not the United States, at the time. He further noted that defendant had failed to establish substantial ties to the United States. In a supporting affidavit, defendant averred that he had visited the United States, had relatives here, and conducted some business here. The magistrate judge concluded that these rather minimal and transitory connections were insufficient, and that application of defendant's position would nullify the holding of Verudgo-Urquidez, as some connection to the United States would have to exist in order for an American court to have jurisdiction in a criminal case. In the alternative, the magistrate judge found the involvement of American authorities insufficient to bring the joint venture doctrine into play.

In his objections, defendant does not attempt to distinguish Verdugo-Urquidez or argue that the magistrate judge erred in finding his ties to this country insufficient. Rather, he argues that the magistrate judge erroneously concluded that the joint venture doctrine did not apply in his case. Under the joint venture doctrine, the Fourth Amendment will apply to a search conducted by foreign officials (or a private individual) if government agents actively participated in the search. United States v. Marzano, 537 F.2d 257, 270

4

(7th Cir. 1976). The mere provision of information or presence of federal agents is insufficient, as is the fact that the foreign official intended to help the government; rather, government agents must actively participate. Id. at 270-71.

There are two problems with defendant's objection. First, it appears that Verdugo-Urquidez eliminated the joint venture doctrine in cases where the defendant is an alien with no substantial ties to the United States and the evidence was seized in a foreign country.[2] Although the Court did not specifically discuss the doctrine, its holding leaves little or no room for its applicability under these circumstances. The court of appeals in Verdugo-Urquidez relied on the doctrine to find that the participation of the DEA agents in the Mexican search there was so great as to make it an American operation. United States v. Verdugo-Urquidez, 856 F.2d 1214, 1225 (9th Cir. 1988). The Supreme Court decided the case on more fundamental grounds, holding that the Fourth Amendment had no applicability at all, no matter the role occupied by the American authorities. Thus, notwithstanding defendant's argument that the Canadians acted as a stalking horse for the government, he cannot prevail on his motion to suppress.[3]

---

[2]The only post-Verdugo-Urquidez case defendant cites, United States v. Behety, 32 F.3d 503 (11th Cir. 1994), concerned a search by Guatemalan authorities of an American citizen's property on an American vessel.

[3]The single exception noted by the Verdugo-Urquidez Court – where the alien has substantial ties to the United States – is inapplicable in the present case. The magistrate judge found that defendant's ties were insufficient, and defendant has not objected to that determination, which is not clearly erroneous and which I accordingly adopt as my own. See Johnson v. Zema Sys. Corp., 170 F.3d 734, 739 (7th Cir. 1999) (noting that "the district court judge must make a de novo determination only of those portions of the magistrate judge's disposition to which specific written objection is made. If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."). According to his affidavit, defendant has been physically present in this country only three times in the past six years, each of relatively short duration: in 2002 he

5

Second, even if the doctrine could apply under these circumstances, the magistrate judge correctly found that the participation of American officials in the search was insufficient to trigger the Fourth Amendment. It is well-settled that providing information to foreign authorities does not transform a subsequent search by foreign officials into a joint venture. Behelty, 32 F.3d at 510; Marzano, 537 F.2d at 270-71. Likewise, the mere fact that the foreign officials are cooperating with American authorities in an American investigation does not bring the doctrine into play. Marzano, 537 F.2d at 271 (citing United States v. Newton, 510 F.2d 1149, 1153 (7th Cir. 1975)). In the present case, it is undisputed that American officials did not participate in any way in the actual searches of defendant's property. The warrants were obtained and executed by Canadian authorities, alleging violations of Canadian law. The warrant application was supported by information gathered by American officials, but that provision of information is clearly insufficient.

Defendant takes issue with the magistrate judge's statement that Canadian officials acted on their own initiative in obtaining the warrant. He notes that the complaints of criminal activity came only from Americans. However, defendant cites no cases holding that the nationality of the instigating officials is significant. In this case, the alleged victims of the scheme are American citizens, who naturally would report the crime to American law enforcement. The fact that the Canadians agreed to cooperate in the investigation is insufficient. See Marzano, 537 F.2d at 271. Likewise, the mere fact that the Canadians and Americans were cooperating as part of the Toronto Strategic Partnership does not

---

took a shopping trip to Buffalo; in 2003 he picked up family members at the Buffalo airport and took them back to Canada; and in 2002 he took a vacation in Florida. The fact that he has relatives in this country is insufficient, as his vague statement about "various business contacts with the United States." (R. 31 ¶ 6.)

6

transform any subsequent search into a joint venture. The record does not support defendant's contention that the Canadians were mere pawns in an American operation. Canadian law enforcement conducted a substantial independent investigation before deciding to obtain a warrant based on alleged violations of Canadian law. Defendant notes that after the present indictment was handed up the Canadian criminal proceedings were dismissed. Again, though, he cites no cases holding that the identity of the nation which ultimately prosecutes the case is a factor under the joint venture doctrine. Indeed, if the fact that the case ultimately ends up in a United States court was significant, the doctrine would apply in virtually all cases involving foreign searches.

For all of these reasons, and those stated by the magistrate judge, I find that the joint venture doctrine does not apply in this case, and that defendant cannot challenge the searches under the Fourth Amendment.

Finally, even if the Fourth Amendment did apply, I would deny the motion. Slater's warrant application was highly detailed and sufficient to establish probable cause.[4] The application established that defendant's business was probably involved in fraud, explained the manner in which the fraud was perpetrated, linked defendant to the business and the allegedly illegal electronic transfers, and provided evidence that documents related to the scheme might be found at the three locations to be searched. Under these circumstances, I certainly cannot second guess the judge's decision to issue the warrant. See Illinois v.

---

[4]Defendant requested an evidentiary hearing, which request the magistrate judge denied. Defendant has not objected to the denial, which in any event was proper. When, as here, the affidavit is the only evidence presented to the warrant-issuing magistrate, the warrant must stand or fall solely on the contents of the affidavit. United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002).

Gates, 462 U.S. 213, 236-37 (1983) (holding that a magistrate's determination of probable cause should be paid great deference, and that the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants).[5] Likewise, the warrants identified with reasonable specificity the items to be seized. See United States v. Shoffner, 826 F.2d 619, 630-31 (7th Cir. 1987) (collecting cases upholding warrants containing terms similar to those in the instant warrants).

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 32) is **ADOPTED**, and the motion to suppress (R. 17) is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is scheduled for **TELEPHONIC STATUS** on **Monday, July 17, 2006, at 10:30 a.m**. The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 11th day of July, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[5]At the very least, the officers could have relied on the warrant in good faith. See United States v. Leon, 468 U.S. 897 (1984).