# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                **Case No. 05-CR-215**

**NAVIN BABOOLAL**
    **Defendant.**

## DECISION AND ORDER

On May 24, 2007, I sentenced defendant Navin Baboolal, a citizen of Canada, to five years in prison on wire fraud charges. The charges arose out of a telemarketing scam, pursuant to which defendant and his cohorts posed as Social Security Administration employees or peddled a bogus prescription drug benefit plan in order to obtain banking information from elderly American citizens, which they then used to make unauthorized electronic withdrawals. On the agreement of the parties, I held open the issue of restitution for 90 days pursuant to 18 U.S.C. § 3664(d)(5).

Defendant argues that restitution was fully addressed in a settlement he reached with the Federal Trade Commission ("FTC"), which instituted a civil suit against him based on the same fraudulent conduct. In the alternative, he asks that any restitution award in this case be reduced by the amount recovered by the FTC.[1] The government contends that defendant must be required to make full restitution to all identified victims. I agree with the government.

---

[1] Defendant asks that the final restitution amount be further reduced by 50%, leaving a total he believes his financial supporters can pay off, thereby facilitating his transfer to a Canadian prison.

## I. FACTS AND BACKGROUND

In November 2004, the FTC filed a complaint against defendant and related entities in the Northern District of Illinois in connection with his fraudulent telemarketing activities. In January 2005, defendant settled the FTC action. Pursuant to that settlement, he agreed to suspend all telemarketing activities and to the entry of a judgment in the amount of $623,000 as "equitable monetary restitution for consumer injury relief." (Def.'s Mem. of Law Regarding Restitution Ex. 2 at 7.) However, that judgment was suspended, ostensibly based on defendant's financial situation. Defendant also agreed to turn over to the FTC any remaining funds held in various bank accounts. The settlement agreement provided that the FTC could, in its sole discretion, use these funds for consumer redress or consumer information remedies, or deposit them into the United States Treasury as disgorgement. The settlement afforded defendant no right to challenge the FTC's choice of remedies. (Id. at 7-8.) The FTC subsequently recovered $25,573.50 from these accounts, which it deposited into the treasury as disgorgement. (Id. Ex. 3.) No victim was compensated with these funds.

In August 2005, the government commenced the instant prosecution based on the same telemarketing fraud targeted by the FTC. On February 14, 2007, pursuant to an agreement with the government, defendant pleaded guilty to one count of wire fraud. At sentencing, I adopted the findings in the pre-sentence report ("PSR") that the scheme involved nearly 4000 victims and caused a loss of about $897,000. (PSR ¶¶ 177, 178.) Based upon the information the probation office was able to collect from the victims, the PSR recommended restitution in the amount of $129,896 to a total of 439 victims. (PSR ¶¶ 40-168, 232.) As indicated, I held

2

Case 2:05-cr-00215-LA   Filed 07/30/07   Page 2 of 6   Document 56

restitution open for 90 days, but no further requests for compensation have been received.[2]

## II. DISCUSSION

Under the Mandatory Victims Restitution Act ("MVRA" or "the Act"), the court must order restitution to the victims of certain crimes, 18 U.S.C. § 3663A(a)(1), including offenses against property committed by fraud or deceit, § 3663A(c)(1)(A)(ii).  The Act requires restitution to be imposed without consideration of the defendant's economic circumstances, although the court may consider the defendant's financial potential in determining the schedule of payments. See United States v. Newman, 144 F.3d 531, 537 (7th Cir. 1998).  Defendant's offense of conviction – wire fraud – is covered by the MVRA. See United States v. Cheal, 389 F.3d 35, 46 (1st Cir. 2004).

Defendant does not contest the restitution figure set forth in the PSR, $129,896, nor does he contend that the individuals listed therein do not qualify as victims under the Act. Instead, noting that restitution is designed to make victims whole rather than punish the defendant, see Newman, 144 F.3d at 538-39, he argues that the FTC has already acted to provide restitution to the victims.  He contends that § 3663A does not contemplate a situation where another governmental agency has already undertaken to provide a remedy.  Thus, he argues that there is no need for a restitution order in this case.

It is true that "the restitution statutes do not permit victims to obtain multiple recoveries for the same loss." United States v. McDaniel, 398 F.3d 540, 555 (6th Cir. 2005).  Section 3664(j) specifically provides: "Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the

---

[2]Section 3664(d)(5) allows the court to hold restitution open for 90 days if the victims' losses are not ascertainable prior to sentencing.

3

victim in (A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State." 18 U.S.C. § 3664(j)(2).

Under this provision, an argument could be made that the restitution due to the victims in this case should be reduced by any amount recovered for them by the FTC.[3] The problem with the argument is that the FTC did not make whole any of the victims. Instead, it deposited the recovered funds into the general treasury as disgorgement. Defendant criticizes the FTC's collection efforts, but that does not change the fact that none of the victims have been made whole. Further, pursuant to the settlement agreement, the FTC was authorized to deposit the funds into the treasury rather than refunding the victims, and defendant waived any right to challenge the FTC's choice of remedy.

Defendant states that the FTC action stripped away any financial benefits from his scheme, as well as foreclosed any potential future earnings. But restitution is about making victims whole, not disgorging profits from the defendant. See United States v. Emerson, 128 F.3d 557, 566 (7th Cir. 1997) (rejecting claim that restitution should be offset by forfeiture amount). And, as noted, the victims did not receive any of the funds seized by the FTC. See United States v. Doe, 374 F.3d 851 (9th Cir. 2004) (leaving open the possibility that disbursements to victims from forfeited funds could offset a restitution order, but rejecting offset claim in that case because the defendant did not allege that any forfeiture proceeds were distributed to victims). The fact that defendant's ability to pay restitution has been diminished

---

[3]The government argues that § 3664(j)(2) does not apply to amounts paid to a third party, such as the FTC, rather than the victim directly. However, I will assume for purposes of deciding this motion that if the FTC had compensated the victims with the amounts it seized, defendant would be entitled to an offset. See United States v. Taves, 150 Fed. Appx. 654, 655 (9th Cir. 2005) (stating that if the FTC later compensated fraud victims, the defendant would be entitled to a restitution offset).

4

by the FTC's seizure of his funds is not something I can consider in deciding whether to award restitution and in what amount.[4]

Finally, defendant asks that, in addition to a $25,573.50 offset based on the FTC seizure, I further reduce the restitution amount owed by 50% to $52,147.75. He indicates that he may have financial supporters who can pay this amount and thereby facilitate his eligibility for transfer to a Canadian prison. The MVRA does not permit such reductions. It requires the court to "order restitution to each victim in the <u>full amount</u> of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1) (emphasis added).

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that an amended judgment issue containing a restitution amount of $129,896 payable to the victims identified in the PSR. Based on my review of his financial situation, I will order that while imprisoned defendant make payments pursuant to the Inmate Financial Responsibility Program, devoting 50% of any prison wages to this obligation. Upon release, he shall make payments at a rate of not less than $100 per month, as a condition of supervised release, and shall devote any federal or state income tax refunds to this obligation. He may not change exemptions without notice to the probation officer.

Neither side has challenged the restitution figures in the PSR or asked for a hearing on the issue. I will, however, withhold entry of the amended judgment until **August 10, 2007** to provide the parties with an opportunity to provide any additional information, including on the

---

[4] Defendant asks me to order the government to provide an accounting of the seized funds. However, I see no basis for doing so. The FTC's collection efforts and remedial decision are independent of the restitution question in this case. There is no evidence that the FTC has compensated any identified victim in this case or that it has any plans to do so.

5

schedule of payments.

Dated at Milwaukee, Wisconsin, this 29th day of July, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge